**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

STANDING TREES, INC.,

        Plaintiff,

v.

UNITED STATES FOREST SERVICE, *et al.*,

        Defendants.

Case No.: 1:25-cv-00237-SE-TSM

### *AMICUS CURIAE* BRIEF IN SUPPORT OF DEFENDANTS

The Amici, *see* contemporaneously filed Motion for Leave to File Amicus Brief by Amici, incorporated and referenced herein, filing as *amicus curiae*, support Defendants' claims and urge this Court to grant Defendants' Cross-Motion for Summary Judgment.

### THE INTERESTS OF THE *AMICUS CURIAE*

Although each of the Amici is a distinct entity with its own mission and/or vision, they all share the objective of responsible, science-based stewardship of the White Mountain National Forest ("WMNF") and the integrity of the forest management planning process.

The Sandwich Integrated Resource Project ("SIRP") is consistent with the Amici's shared values. Collectively, the Amici promote the responsible stewardship of the WMNF through compliance with the 2005 White Mountain National Forest Land and Resource Management Plan (the "Forest Plan") in accordance with the National Forest Management Act of 1976 ("NFMA") and the Forest and Rangeland Renewable Resources Planning Act of 1974 ("RPA"). These laws direct the U.S. Secretary of Agriculture to develop plans for units of the National Forest System. Among other things, these plans must: "provide for multiple use and sustained yield of the products and services obtained therefrom . . . and, in particular, include

1

coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness"

and "determine forest management systems, harvesting levels, and procedures in the light of all

of the uses[,] . . . the definition of the terms 'multiple use' and 'sustained yield[,]' . . . and the

availability of lands and their suitability for resource management." 16 U.S.C. § 1604(e). The

Forest Plan meets these conditions. It was adopted after extensive public participation resulted

in a broad consensus amongst interested parties. The Forest Plan was never appealed or

otherwise litigated. Importantly, the Forest Plan expressly contemplated timber management in

the Sandwich Range portion of the White Mountain National Forest.

The Defendant's Amici all support the "multiple use" approach to managing National

Forest lands. In fact, several of the Defendant's Amici collectively own and sustainably manage

hundreds of thousands of acres of forested land. For some of the Defendant's Amici, this has

been the case for over a century. Like the WMNF, the Defendant's Amici follow science-based

silviculture for multiple uses, including habitat diversity, recreation, and sustainable timber

resources. Thus, the Amici are uniquely positioned to speak on the SIRP and its consistency with

the Forest Plan.

## ARGUMENT

The Defendant USFS proposed to "conduct silvicultural management on about 638 acres

and prescribed burning for habitant improvement on 306 acres of MA 2.1 lands within the

Sandwich habitat management unit." AR 6757. The Defendants gave careful, thoughtful

consideration in approving the Projects, emphasizing the role of public participation and the

benefits the Projects would bring to the WMNF by furthering the goals and objectives of the

Forest Plan. Contrary to the Plaintiff's assertion that the Defendants neglected their duties, the

Defendants subjected the SIRP to a years-long review process that culminated in proposals

designed to best advance the interests of the WMNF. As explained in greater detail below: (1) the Projects benefit the WMNF by furthering the goals and objectives of the Forest Plan; (2) the Defendants conducted appropriate due diligence in considering possible alternatives; (3) the Plaintiff's pleadings contain inaccuracies and mischaracterizations; and (4) the Defendants provided ample opportunity for public participation that had direct impacts on the Projects.

I.  **The Projects are necessary to advance the goals and objectives of the Forest Plan and will provide numerous benefits to the WMNF.**

The Forest Plan sets forth numerous goals and objectives for the WMNF. AR 12170 et seq.  The Forest Service's overall objective for the WMNF is to "provide recreation and other opportunities, experiences, and benefits, some of which are not readily available elsewhere." AR 12170. The Forest Plan also provides goals and objectives tailored to specific concerns, such as air quality (AR 12171), recreation (AR 12177), wildlife (AR 12187) and vegetation management (AR 12184). Contrary to the Plaintiff's claims that the SIRP does not comply with the Forest Plan, the SIRP is *needed* to achieve the Forest Plan's goals and objectives, as set forth in the SIRP Decision Notice ("SIRP NOD") and the SIRP Environmental Assessment and Finding of No Significant Impact ("SIRP EA").  The SIRP's proposed actions directly correlate to goals and objectives of the Forest Plan.

### A.  *SIRP's Contributions to Forest Plan's Goals and Objectives*

Of primary importance is that the Forest Plan and the 2006 New England Wilderness Act (NEWA), which derived from the consensus reached in the Forest Plan, included the designation of general forest management lands in the Sandwich Opportunity Area, which encompasses the SIRP locus.  *See* AR 12312 (Forest Plan Land Allocation map showing general forest management lands south of the Sandwich Range Wilderness Area (generally south and west of Conway on the Land Allocation map).  General Forest Management Area is designated as MA

3

2.1 in the Forest Plan.  AR 12233.  MA 2.1 lands' first and primary purpose is to "Provide high

quality sawtimber and other timber products on a sustained yield basis."  AR 12228.

The Sandwich Range Wilderness Area (shown in light purple at AR 12312) was first

established by the New Hampshire Wilderness Act of 1984, Public Law 98-323 ("NHWA"), and

then expanded specifically in the locus affected by SIRP by the New England Wilderness Act of

2006, Public Law No. 109-382 ("NEWA").  The NEWA designated new portions of Sandwich

Range Wilderness Area as follows:

> In accordance with the Wilderness Act (16 U.S.C. 1131 et seq.), the following
> Federal land in the State [of New Hampshire] is designated as wilderness and as
> components of the National Wilderness Preservation System… (2) Certain
> Federal land managed by the Forest Service, comprising 10,800 acres, as
> generally depicted on the map entitled, 'Proposed Sandwich Range Wilderness
> Additions—White Mountain National Forest', dated February 6, 2006, and which
> are incorporated in the Sandwich Range Wilderness[.]

*Id*. at Sec. 102.  The map expressly referenced by NEWA is shown here (figure 1):



Figure 1 shows the existing Sandwich Range Wilderness Area as of 2006 in purple, with the proposed additions to the Sandwich Range Wilderness area in green. *Id.* The gray areas south of the newly created wilderness areas are MA 2.1, for general forest management. The SIRP proposes 638 acres of timber management in portions of these areas (shown in green cross hatching below in figure 2):



AR 000056; Compare AR 06711 (map showing specific proposed harvest locations as a still-smaller subset of the green crosshatched areas).

Thus, the proposed vegetation management is occurring exactly where the NEWA and the Forest Plan intended for it to occur. All of the Amici—including the Defendant's Amici supporting this Brief as well as the Plaintiff's Amicus, the Wonalancet Outdoor Club, actively participated in the process by which the Forest Plan and the NEWA were developed. *See*

Wonalancet Outdoor Club, Newsletter (Dec. 1998), https://www.wodc.org/newsletter/1998-12.pdf (last visited January 19, 2026) (describing effort to enlarge wilderness area and change MA 2.1 designations); Wonalancet Outdoor Club, Newsletter (Nov. 2005), https://www.wodc.org/newsletter/2005-11.pdf (last visited January 19, 2026) (describing proposed wilderness area enlargements and the importance of advocacy). The final version of NEWA enacted by Congress did not give every constituency exactly what it wanted. *See* Wonalancet Outdoor Club, Newsletter (Nov. 2005), https://www.wodc.org/newsletter/2005-11.pdf (last visited January 19, 2026) (describing deficiencies in wilderness designations contemplated in the Forest Plan but encouraging members to support the Forest Plan and legislation that would become NEWA). But these were the tradeoffs required to secure long-term wilderness protections for critical areas of the WMNF. Most importantly, notwithstanding the shortcomings identified by the Amicus Wonalancet Outdoor Club and possibly other interested parties, the Forest Plan was adopted without objection or appeal from the Wonalancet Outdoor Club or the Wonalancet Preservation Association, and the wilderness was expanded to wide acclaim, including by the undersigned Amici supporting the Defendant.

The Plaintiff and its Amici now advocate for implementation, in practice, of the wilderness designations that NEWA and the 2005 Forest Plan did not create. They want the whole loaf after getting only 85% of what they wanted in NEWA. *Id*. While this might be viewed as admirable commitment to a long-term vision, at present it is not compatible with the law, which designates the area in question as MA 2.1 (General Forest Management Area). The MA 2.1 designation not only allows for cutting, logging, and silvicultural management, but is intended to prioritize it. AR 12228.

6

It is fair to say that the Plaintiff and the Plaintiff's Amici are organizations with either a minimalist-use priority, *see* AR 11263 ("Standing Trees … works to ensure New England's Public Lands are managed … to maximize carbon storage and protect clean water, clean air, public health and intact habitat for the region's native biodiversity."); Document 16 at 2 ("[Wonalancet Preservation Association's] objects … are to prevent pollution and commercial and other activities detrimental to the natural beautify of the Wonalancet Basin[.]"), or a recreation priority, *id* at. 3 ("[Wonalancet Outdoor Club's] objects … are for provision and care of paths, trails and other facilities for persons visiting the White Mountain National Forest and other mountain and forest lands… and to promote … the enforcement of the laws regarding their conservation and use.") concerning how the White Mountain National Forest should be used.

*These views are worthy ones* and must be considered by the Defendant in assessing its activities in the White Mountain National Forest.  But these views *are not the only* considerations that the Defendant is required to consider, or that the Forest Plan is required to honor.  16 U.S.C. § 1604(e) (requiring "multiple uses" that include silviculture).  The Forest Plan as a whole, and the SIRP in particular, incorporate, consider and address these priorities and objectives.  See AR 12125 ("The project will advance Forest Plan goals and objectives [for MA 2.1] by providing high-quality timber products, diversifying wildlife habitat and addressing transportation management needs.").  Indeed, the SIRP was consistently modified in response to comment and objection from the Plaintiff, Plaintiff's Amici and others.  *See*, *e.g.*, AR 12139-40 (noting that concerns raised by public comment concerning old-growth forest caused the Defendant to identify, remove and protect fifty acres of habitat meeting some or all of the characteristics of old-growth forest), AR 6757 (same); AR 6763 (providing 66 foot no-cut corridors for hiking trails to address concerns about seeing timber cuts).

That the SIRP, the Forest Plan, or NEWA did not go as far as the Plaintiff and its Amici would have liked it to does not mean that the SIRP is unlawful, unreasonable, or unsupported by the Administrative Record.  On the contrary, the Defendant's decision is well-supported by an exhaustive record that went through modifications and adaptations to respond to public comment, including comment by the Plaintiff and Plaintiff's Amici.

### B. The Administrative Record was developed over a multi-year effort that permitted substantial public involvement.

The SIRP was conceived and initially proposed in early 2020.  *See*, *e.g.*, AR at 00025 (Open House Invitation); AR 00001 (Project Initiation Letter).  A final Notice of Decision was issued in June 2024 (AR 06754).  A final Objection Response Letter was issued June 5, 2024 (AR 12125).  In the four-year interim between project initiation and final objection response, the Defendant held numerous public information opportunities, received very substantial public comment, and provided interested parties with opportunities to object.  AR 6760-62 (detailing public involvement and responses to public comment).  The final Administrative Record in this matter exceeds twelve thousand pages and responded to public objections in great detail.  *See, generally*, AR; AR 12125.  The Defendant considered a no-action alternative and found based on the record that no-action would not meet the Forest Plan goals of timber harvesting under MA 2.1, nor the wildlife diversity objectives in the *locus*.  AR 6766.

The Forest Plan contains a plethora of goals and objectives that the Defendants are charged with implementing.  Taking no action would mean the benefits outlined in the Projects would not be realized and the corresponding goals and objectives of the Forest Plan would not be advanced. Even a "less action" alternative may mean a commensurate reduction in the Projects' benefits, which could mean a reciprocal reduction in the advancement of the Forest Plan's goals and objectives. While the Plaintiff claims the Defendants have contravened their duties by

8

approving the SIRP, the alternative proposed by the Plaintiff and supported by the Plaintiff's

Amici would not achieve the multiple goals and objectives set out in the Forest Plan and would

not be consistent with the Defendants' obligations under NMFA and RPA.  The Defendant had

an obligation to *consider* comments that were timely submitted, and the record reveals they did

so.  The fact that the Defendants did not adopt the no-action alternative does not mean it was not

adequately considered. The SIRP proposes reasonable, modest, well-regulated timber harvesting

that will produce numerous outcomes aligned with the Forest Plan.

III.    **The Plaintiff overstates the extent of the SIRP's modest timber management proposal and mischaracterizes the Defendant's analysis of climate change factors.**

It is also important to contextualize the Plaintiff's emphasis on the SIRP's approximately

638 acres of commercial logging. The WMNF contains approximately 800,000 acres, so 3,000

acres represents only about 0.08 percent of the total WMNF. According to the U.S. Forest

Service, New Hampshire has an estimated 4,726,871 acres of forest land. Based on this figure,

the SIRP's anticipated 638 acres of logging constitutes only about 0.013% of New Hampshire's

total forest land. Therefore, while 638 acres is certainly a sizable amount of land, it is a fraction

of a percentage of the WMNF and New Hampshire's overall forest land.

The Plaintiff's and the Plaintiff's Amici's discussion of climate change and carbon

storage also misses the mark. *See* Document 16 at 10.  These are critical issues for our world,

and the Defendant's Amici are strong collective advocates of the climate benefits of a well-

managed forest, including the preservation and maintenance of old-growth forest areas.

However, while carbon sequestration and carbon storage are essential characteristics of a healthy

forest ecosystem, they cannot be the *only* considerations because forest management is a

culmination of multiple goals and objectives.  16 U.S.C. 1604(e). While important, climate

9

change/carbon storage cannot come at the expense of all other goals and objectives in a multi-use forest such as the WMNF.[1]

It is also a gross oversimplification to say that logging is detrimental to the climate. Sustainably harvested forests—such as proposed in the SIRP—continue to sequester carbon. The WMNF will *still* act as an important carbon sink with the SIRP in place.  The proposed harvest is for wood products (such as lumber) that continue to store the locked-in carbon (as opposed to fuel production, which releases it).  *See* AR 12138 ("[S]ome of the harvested timber may be converted into wood products, which continue to store carbon for many years.").  Moreover, the WMNF as a whole is managed with carbon sequestration as an objective and selective cutting of the kind contemplated here renews the forest for carbon absorption by fast-growing new trees and species diversity.  AR 12138 (citing SIRP's reliance upon WMNF's 2024 Sandwich Carbon Assessment specific to SIRP and 2024 Forest Carbon Assessment applying to entire WMNF); *id.*); AR 06712 (noting that age class and species diversity created by timber harvesting may *increase* carbon sequestration).

By the Plaintiff's and the Plaintiff's Amici's logic, no logging should even occur in our National Forests.  Setting aside that this is a dubious scientific proposition, *see* AR 12137 ("[I]n the past 30-plus years, carbon stock on the White Mountain National forest continued to increase despite the fact that timber harvesting projects have taken place throughout that period[.]"), our National Forests are public lands expressly designated for a multiplicity of uses, including timber management.  16 U.S.C. 1604(e).

---

[1] Executive Order 14072 cited by the Plaintiff does call for retaining and enhancing carbon storage, but it also mandates that federal forests be managed to (among other things) "provide outdoor recreational opportunities" and "promote sustainable local economic development." Exec. Order No. 14072, 87 Fed. Reg. 24,851, 24,852 (Apr. 27, 2022). To be sure, the Executive Order in no way directs that climate resiliency/carbon storage come at the expense of a forest's other goals and objectives, as set forth in a forest management plan.  *See* AR 12139-40.

## CONCLUSION

The comprehensive attention the Defendant gave to the public participation processes for the SIRP demonstrates the care with which the SIRP was handled. Far from abandoning its legal duty, the Defendant gave the SIRP careful consideration, invited feedback from interested stakeholders, and updated the SIRP based on public comments and additional analysis.  The Plaintiff's dissatisfaction with the results does not mean that the process was faulty, inadequate, arbitrary or capricious.  The Court should deny the Plaintiff's Cross-Motion for Summary Judgment and grant the Defendant's Cross-Motion for Summary Judgment.

Respectfully Submitted,

**THE SOCIETY FOR THE PROTECTION OF NEW HAMPSHIRE FORESTS**

By its Attorneys,

ORR & RENO, P.A.

January 23, 2026          By:      _/s/ Jeremy D. Eggleton_____
                                   Jeremy D. Eggleton, Esq. (NH Bar #18170)
                                   45 South Main Street
                                   P.O. Box 3550
                                   Concord, NH  03302-3550
                                   Phone:  603-224-2381
                                   Fax:     603-224-2318

**And other joining Amici, represented by Attorney Eggleton for this Brief:**

**THE APPALACHIAN MOUNTAIN CLUB**

By: /s/ Nicole Zussman_____
Nicole Zussman
10 City Square
Boston, MA 02129
203-912-0421
nzussman@outdoors.org

**THE NEW HAMPSHIRE WILDLIFE FEDERATION**

By: /s/ James Morse
James Morse
54 Portsmouth Street
Concord, NH 03301
603-224-5953
admin@nhwf.org

**THE AUDUBON SOCIETY OF NEW HAMPSHIRE**

By: Douglas Bechtel
Douglas Bechtel
84 Silk Farm Road
Concord, NH 03301
603-224-9909
dbechtel@nhaudubon.org

**THE NEW HAMPSHIRE TIMBERLAND OWNERS' ASSOCIATION**

By: Jasen Stock
Jasen Stock
54 Portsmouth Street
Concord, NH 03301
603-224-9699
jstock@nhtoa.org

**THE NORTHERN FOREST CENTER**

By: Rob Riley
Rob Riley
18 North Main Street, Suite 204
Concord, NH 03301
603-229-0679
rriley@northernforest.org

**RUFFED GROUSE/ AMERICAN WOODCOCK SOCIETY**:

By: Karl Malcolm
Karl Malcolm
Vice President of Conservation
Ruffed Grouse Society & American Woodcock Society
100 Hightower Boulevard, Suite 101
Pittsburgh, PA 15205

**GRANITE STATE DIVISION OF THE SOCIETY OF AMERICAN FORESTERS:**

By: _Christopher Hinz_____
Christopher Hinz, Chair
107 Howard St. Apt.2
Keene, NH 03431
603-325-5430
christopherjhinz@gmail.com

**CHARLES NIEBLING**

By: _Charles Niebling_
Charles Niebling
10 Queen Street
Boscawen, NH 03303
603-965-5434
charlieniebling@gmail.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing has been served, this day, electronically through ECF upon all parties of record.

_/s/ Jeremy D. Eggleton_____

13